**DURHAM JONES & PINEGAR**
R. Stephen Marshall (2097)
Erin T. Middleton (10666)
Attorneys for defendant KeyBank, N.A.
111 East Broadway, Suite 900
Salt Lake City, Utah 84111
Telephone: (801) 415-3000
Facsimile: (801) 415-3500
Email: smarshall@djplaw.com
Email: emiddleton@djplaw.com

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| TROY D. TISCHNER, ROBYN TISCHNER,<br><br>Plaintiffs,<br><br>vs.<br><br>ONEWEST BANK, FSB f/k/a/ INDY MAC BANK FSB, KEY BANK, N.A., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, CITICORP TRUST BANK, FSB, AND JOHN AND JANE DOES OF AN UNKNOWN NUMBER,<br><br>Defendants. | **MEMORANDUM IN SUPPORT OF DEFENDANT KEYBANK'S MOTION TO DISMISS**<br><br>Civil No. 2:10-cv-00056<br><br>Judge David Sam |

Defendant KeyBank, N.A. ("KeyBank") submits its memorandum in support of its motion to dismiss.

**INTRODUCTION**

In the past several months, KeyBank has been sued three times in this Court by different individuals represented by the same attorney on factual allegations and claims that are virtually

identical. The present case is the first such suit. The other actions are *Bryan Mena v. JP Morgan Chase Bank, National Association, f/k/a Washington Mutual Bank, KeyBank National Association and John and Jane Does of an Unknown Number*, Civil No. 2:10-cv-00065 (filed 1-28-10), and *Patricia A. Byington v. First Horizon Home Loans, a Division of First Tennessee Bank, NA, KeyBank, NA*, Civil No. 2:10-cv-00506 (filed 5-28-10). Copies of the complaints (without exhibits) in the *Mena* and *Byington* actions are submitted respectively as Exhibits A and B. The factual allegations and claims in the complaints filed in each of these actions mirror each other and are very nearly word-for-word the same. None of the complaints, however, provides any specific facts in support of those allegations. All three complaints are infected with the same failure to provide concrete factual allegations of wrongdoing by KeyBank that resulted in specific, measurable injuries.

A complaint must be tailored to the facts of a specific case. Litigation cannot be based on cookie-cutter pleadings or broad and generic allegations that are not founded on specific facts. The identical nature of the complaints in these three cases underscores the problems with the Tischners' complaint in the present case. Their allegations are not factually specific, but instead are confusing and vague. In order to survive a Rule 12(b)(6) motion, the Tischners must have provided "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (dismissing complaint where Plaintiffs "have not nudged their claims across the line from conceivable to plausible"). The Court "need not accept conclusory allegations without supporting factual averments." *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir.1998). On a motion to dismiss for failure to state a claim, the Court should not weigh evidence, but should "assess

whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir.1991).

The Tischners' complaint must be dismissed under this standard. The TILA claim relies on the wrong statute. The RESPA claim is time-barred. Their claims for declaratory judgment do not allege an actual controversy between the parties, but are based on hypothetical issues that are not grounded in specific factual allegations. Their usury claim is not based on any cited statute. Their estoppel, fraud, and quiet title claims also fail to state a claim. They do not describe any specific bad act or wrongful conduct by KeyBank nor do they identify the injuries they claim to have incurred. These pleading deficiencies require the dismissal of this action.

## FACTUAL BACKGROUND

For the purposes of a motion to dismiss, the Court must accept as true all of the allegations in the complaint. *See Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir.2002). The following facts, while not a complete recitation of all of the allegations in the complaint, are intended to provide a brief, general background with respect to the transactions on which the complaint is based.

1. Plaintiffs Troy D. and Robyn D. Tischner (the "Tischners") own certain real property located in Salt Lake County, State of Utah. *See* Complaint ¶ 8.

2. On or about May 11, 2006, the Tischners entered into a loan transaction with the OneWest Bank's predecessor in interest, which was secured by a trust deed on their property. *See* Complaint ¶¶ 9-10.

3. On or about May 31, 2008, Troy D. Tischner entered into a loan transaction with KeyBank, which was secured by a second position trust deed on their property. *See* Complaint

¶¶ 14-16. A copy of the "Key Equity Options Agreement," which the Tischners refer to as the "second position Note" in Paragraph 14 of their complaint, is submitted herewith as Exhibit C. A copy of the "Notice of Right to Cancel Open End Credit," which the Tischners refer to as the "TIL statement in Paragraph 42 of their complaint, is submitted herewith as Exhibit D.[1]

    4.    A "Servicer" was designated for each of the OneWest Bank and the KeyBank loans. Each loan was "pooled and sold" by the lenders to unknown persons as securities. *See* Complaint ¶ 22.[2]

    5.    KeyBank is not the present holder of the Note that Troy D. Tischner signed. *See* Complaint ¶ 25.[3]

## ARGUMENT

### I. THE TISCHNERS FAIL TO STATE A CLAIM UNDER TILA.

In their Third Cause of Action, the Tischners allege that KeyBank "failed to include and disclose certain charges in the finance charge shown on the TIL statement . . . ." Complaint ¶ 42. These charges, they assert, were "were required to be disclosed pursuant to 15 USC sec. 1605 and Regulation Z sec. 226.4, thus resulting in an improper disclosure of finance charges in

---

[1] KeyBank is entitled to submit these loan documents without the need to have its motion to dismiss converted to a motion for summary judgment, since each of the documents, signed by Tischners, is "an indisputably authentic copy" of the document. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.")

[2] Although KeyBank disputes this allegation, for the purposes of this motion to dismiss the allegation should be accepted as true. *See Ruiz*, 299 F.3d at 1181.

[3] KeyBank also disputes this allegation. For the purposes of this motion to dismiss, however, the allegation should be accepted as true. *See Ruiz*, 299 F.3d at 1181.

violation of 15 USC sec. 1601 et seq., Regulation Z sec. 226.18(d)." *Id.* The Tischners claim further that, "[b]y calculating the annual percentage rate ('APR') based on improperly calculated and disclosed amounts, Defendants are in violation of 15 USC sec. 1601 et seq., Regulation Z sec. 226.18(c), 18(d), and 22." *Id.* ¶ 43.

The Tischners have failed to state a claim under the statutes and regulations that they cite in their complaint. They did not identify a particular statutory provision of TILA other than the over-broad reference to "15 USC sec. 1601 et seq." The use of the term "et seq." is unhelpful since it takes in the entire Act. Nor do the Tischners specify the subsection of 15 U.S.C. § 1605 that they claim KeyBank violated. The provisions of Regulation Z that the Tischners cite, 12 C.F.R. §§ 226.18(c), 18(d), and 22, do not apply to their loan with KeyBank. Those sections fall under Subpart C of Regulation Z, which applies only to "closed-end credit" transactions. Troy Tischner's loan with KeyBank is a home equity loan and, as such, is governed by Subpart B of Regulation Z. 12 C.F.R. § 226.5b of Subpart B defines "home equity plans" as "open-end credit plans secured by the consumer's dwelling." "Open-end credit," as defined in Regulation Z, means:

> consumer credit extended by a creditor under a plan in which:
>
> (i) The creditor reasonably contemplates repeated transactions;
>
> (ii) The creditor may impose a finance charge from time to time on an outstanding unpaid balance; and
>
> (iii) The amount of credit that may be extended to the consumer during the term of the plan (up to any limit set by the creditor) is generally made available to the extent that any outstanding balance is repaid.

12 C.F.R. § 226.2(20). The loan agreement between KeyBank and Troy Tischner is an "open-end credit" under this definition. The loan documents specifically identify the loan as an "open-

5

end credit." The Tischners signed a "Notice of Right to Cancel Open-End Credit" (submitted herewith as Exhibit D), which states, "Lender has agreed to establish an open-end credit account for you." Troy Tischner also signed a "Key Equity Options Agreement" (submitted herewith as Exhibit C), which states, "This Agreement governs the use of your Key Equity Options line of credit account (the 'Account') with us. . . ." It describes your variable rate, open-end, revolving line of credit with us . . . ." Exh. B, at 1.

The Tischners' complaint does not allege a violation of any provision under Subpart B of Regulation Z, which applies to "open-end credit" transactions, but instead alleges a violation of 12 C.F.R. § 226.18 & 226.22. *See* Complaint ¶¶ 42-43. As noted above, those sections of Regulation Z fall under Subpart C, which applies only to closed-end credit transactions and is not applicable to this open-end credit transaction. The Tischners have not claimed that KeyBank breached any provision of TILA or of Regulation Z applicable to open-end credit transactions. Their Third Cause of Action under TILA should be dismissed.

## II. THE TISCHNERS' RESPA CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS.

In their Second Cause of Action, the Tischners claim that KeyBank violated RESPA, 12 U.S.C. § 2607. *See* Complaint ¶¶ 39-40. This claim is barred by the one-year statute of limitation, since the KeyBank loan to Troy Tischner closed in May 2008.[4]  12 U.S.C. § 2614. The claim must also fail because the Tischners failed to allege that KeyBank assessed any improper charges or fees.

---

[4] The Tischners allege that the loan closed on May 31, 2008. The loan documents (Exhibits C and D hereto) show a closing date of May 27, 2008. The discrepancy is immaterial since the TILA claim would be time-barred under either date.

### III. THE TISCHNERS' CLAIM FOR DECLARATORY JUDGMENT MUST BE DISMISSED FOR FAILURE TO IDENTIFY AN ACTUAL CONTROVERSY.

In their Fifth Cause of Action, the Tischners allege that "an actual controversy exists between plaintiffs and defendants regarding the amenability of the subject property to sale by defendants . . . ." Complaint ¶ 51. The Tischners failed, however, to identify that alleged controversy with any specificity. They state that they "*by diligent search or otherwise, could not have discovered*, without the assistance of Servicer and, consequently, the named defendants, the identities of any actual holder of the Notes [defined as both the OneWest and KeyBank notes] or obligees there under [sic], or any interest of any such holder." Complaint ¶ 49, emphasis added. They allege further that, "*[i]n the event* that an investor in the obligations under the Notes, or any assignee of an interest in the Notes, did not obtain assignment of the Trust Deeds [defined as the trust deeds for both the OneWest Bank and KeyBank loan transactions], the obligations of the Notes have, to that extent, become unsecured, and the Notes and Trust Deeds, may not be enforced." Complaint ¶ 50, emphasis added.

The Tischners do not allege that, in fact, they do not know the identity of the holder of the KeyBank note. They only say that they "could not have discovered" who the holder is "by diligent search or otherwise." Complaint ¶ 49. This is not an actual controversy between the parties. They do not allege that they in fact performed a diligent search or otherwise made an effort to discover the identity of the holder. The hypothetical inability of the Tischners to find out the identity of the holder is not a controversy that needs resolution by the Court.

Likewise, the Tischners' allegation is equally tenuous that "in the event" that an investor did not obtain an assignment of the Trust Deed, then the note is unenforceable. Complaint ¶ 50.


This averment is not a specific allegation of fact, but a hypothetical statement that would only become ripe "in the event" that an investor failed to obtain an assignment of the trust deed. The Tischners do not allege that this event, in fact, occurred. This is not a controversy between the parties that is ripe for adjudication.

The Court cannot issue an advisory opinion, but can only issue a declaratory judgment where an actual controversy exists between the parties. *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1110 (10th Cir. 2010) ("The crucial question is whether granting a present determination of the issues offered will have some effect in the real world.") (internal quotation marks omitted). The Court cannot rule based on an issue that is merely hypothetical:

> [D]eclaratory judgment actions often require courts to face the difficult task of distinguishing 'between actual controversies and attempts to obtain advisory opinions on the basis of *hypothetical controversies*. . . . Thus, the Supreme Court has held that when considering the potential mootness of a claim for declaratory relief, the question is whether the facts alleged, under all the circumstances, show that there is *a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment. . . .

*Rio Grand Silvery Minnow*, at 1111 n.12 (citations and internal quotation marks omitted, emphasis added), quoting *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122, 94 S. Ct. 1694, 40 L.Ed.2d 1 (1974). The Tischners' allegations in the Fifth Cause of Action fail to meet this standard. They are based on hypothetical possibilities, not on an actual fact situation. Because the Tischners have not identified an actual controversy between them and KeyBank, their Fifth Cause of Action should be dismissed.

**IV.   THE TISCHNERS' USURY CLAIM SHOULD BE DISMISSED.**

In their Fourth Cause of Action, the Tischners claim that the interest rate charged by KeyBank is usurious. *See* Complaint ¶¶ 45-46. They allege that the transaction was "subject to the rate limitation set forth under state and federal law," but do not cite any specific statute in support of this allegation. They allege only that KeyBank's loan was contrary to "applicable law." *See* Complaint ¶¶ 45-46.

There is no limit on the interest rate for consumer loan transactions under Utah law. Utah's usury statute, once codified at Utah Code § 15-1-2, was repealed 41 years ago by Laws 1969, c. 18, § 9.103. Utah's current law found at § 15-1-1(1), states that "parties to a lawful contract may agree upon any rate of interest for the loan." *See also* Utah Code Ann. § 70C-2-101 (2001) ("Except where restricted or otherwise covered by provisions of this title, the parties to a consumer credit agreement may contract for payment by the debtor of any finance charge and other charges and fees."). Even if there were a state statute imposing a limit on interest, under the National Banking Act, 12 U.S.C. § 85, as a national banking association, KeyBank is exempt from any Utah statute that might regulate interest rates. *See Marquette Nat. Bank of Minneapolis v. First of Omaha Service Corp.*, 439 U.S. 299, 99 S. Ct. 540, 58 L.Ed.2d 534 (1978) (holding that the National Bank Act authorized a national bank based in one state to charge its out-of-state credit card customers an interest rate on unpaid balances allowed by its home state, when that rate is greater than that permitted by the state of the bank's nonresident customers).

Even if KeyBank could be subject to a claim that its interest rate was usurious, Section 10 of the Key Equity Options Agreement (Exhibit C hereto) provides that the maximum annual

percentage rate that can be charged on the Tischner loan is 18 percent. The Tischners cannot identify any legal authority under which an 18 percent APR is usurious and unenforceable. Their Fourth Cause of Action should be dismissed.

## V. THE TISCHNERS' ESTOPPEL CLAIM MUST BE DISMISSED.

KeyBank joins in the legal arguments raised by OneWest Bank in Point VI of its Memorandum in Support of Motion to Dismiss and to Release Lis Pendens (dkt. 7), at 14-15. Those arguments apply equally with respect to the Tischners' claim for declaratory judgment against KeyBank in the First Cause of Action.

In addition, the claim for a declaratory judgment in the First Cause of Action should be dismissed because it failed to allege the existence of an actual controversy between KeyBank and the Tischners. As argued in Point III above, a claim for declaratory relief must be based on an actual controversy between the parties and not on a hypothetical dispute that has not yet ripened. In their First Cause of Action, the Tischners allege that the assignment of the KeyBank loan to a "Servicer,"[5] which they assert refused to disclose to the Tischners the interests of the assignees of the loan. The result of this behavior, the Tischners allege, "is to subject borrowers and their successors in title, to risks, abuses, and prejudice, and to render impossible proper discharge of their obligations on the Notes." *See* Complaint ¶¶ 30-33.

These allegations are insufficient to state a claim for declaratory relief that is based on an actual controversy between KeyBank and the Tischners. The Tischners do not state how the alleged refusal of a loan servicer to identify assignees has caused them to be "subject to" "risks,

---

[5] As noted above, KeyBank has not transferred or assigned the loan to a servicer, but services the loan itself. For the purposes of this motion to dismiss, however, the allegation that KeyBank assigned the Tischner loan to a "Servicer" may be taken as true.

abuses, and prejudice." The Tischners allege only that they are "subject to" these harms, but do not allege that they have, in fact, suffered any such harm. Nor do they identify the nature of that harm. This allegation insufficient to satisfy the requirement of "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Rio Grand Silvery Minnow*, at 1111 n.12. Further, the Tischners do they state how the alleged refusal of a loan servicer to identify assignees could possibly "render impossible proper discharge of their obligations on the Notes."

Finally, the Tischners make no effort at all in their complaint to distinguish between the loan from OneWest Bank and the loan from KeyBank. They lump both loan agreements together as the "Notes" and do not distinguish between the actions of OneWest Bank and KeyBank. They allege that each lender caused the same injuries to the Tischners (whatever those injuries may be). Neither lender, however, can legally be responsible for harm caused by the other. This is a fatal flaw in their pleading. They do not allege any real injury that was caused by a breach of any duty by KeyBank, as opposed to OneWest Bank.

The Court should hold that the Tischners' First Cause of Action should be dismissed for failure to allege anything more than a hypothetical controversy between them and KeyBank.

**VI.  THE TISCHNERS' QUIET TITLE AND REFUND CLAIMS SHOULD BE DISMISSED.**

KeyBank joins in the legal arguments raised by OneWest Bank in Subpoints 1 and 2 of Point IV of its Memorandum in Support of Motion to Dismiss and to Release Lis Pendens (dkt. 7), at 8-11. Those arguments apply equally with respect to the validity of KeyBank's Note and Trust Deed and require the dismissal of the Tischners' claims for quiet title and refund against KeyBank in the Sixth and Seventh Causes of Action.

**VII. THE TISCHNERS' FRAUD CLAIM MUST BE DISMISSED.**

KeyBank joins in the legal arguments raised by OneWest Bank in Subpoint 2 of Point V of its Memorandum in Support of Motion to Dismiss and to Release Lis Pendens (dkt. 7), at 12-14. Those arguments apply equally with respect to the Tischners' fraud claim against KeyBank in the Fourth Cause of Action.

**VIII. THE LIS PENDENS SHOULD BE RELEASED.**

KeyBank joins in the legal arguments raised by OneWest Bank in Point VI of its Memorandum in Support of Motion to Dismiss and to Release Lis Pendens (dkt. 7), at 15-16. Those arguments apply equally with respect to the validity of Tischners' lis pendens.

## CONCLUSION

The Tischners have failed to plead any valid claim against KeyBank. As argued above, each of their claims must be dismissed. The pleading failures in the Tischners' complaint cannot be cured by an amendment. KeyBank respectfully urges this Court to dismiss their complaint with prejudice. Further, the Court should order the release of the lis pendens.

DATED this 5th day of August, 2010.

                DURHAM JONES & PINEGAR

                By: /s/ R. Stephen Marshall
                    R. Stephen Marshall
                    Attorneys for defendant KeyBank NA
                    111 East Broadway, Suite 900
                    Salt Lake City, Utah 84111
                    Telephone: (801) 415-3000

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 5th day of August, 2010, a true and correct copy of the foregoing MEMORANDUM IN SUPPORT OF DEFENDANT KEYBANK'S MOTION TO DISMISS was served by the method indicated below, to the following:

| | | |
|---|---|---|
| Jeremy Rogers | (X) | Electronic CM/ECF Notification |
| 5416 South 550 East | ( ) | U.S. Mail, Postage Prepaid |
| Murray, Utah  84107 | ( ) | Hand Delivered |
| Attorneys for Plaintiffs | ( ) | Overnight Mail |
| | ( ) | Facsimile |
| | ( ) | Email |

| | | |
|---|---|---|
| Michael D. Black | (X) | Electronic CM/ECF Notification |
| Parr Brown Gee & Loveless | ( ) | U.S. Mail, Postage Prepaid |
| 185 S State St Ste 800 | ( ) | Hand Delivered |
| PO Box 11019 | ( ) | Overnight Mail |
| Salt Lake City, UT 84111 | ( ) | Facsimile |
| (801)532-7840 | ( ) | Email |
| Attorneys for OneWest Bank and MERS | | |

/s/ R. Stephen Marshall